UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT A. MELTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-01103-JAR |
| | ) | |
| MICHAEL BOWERSOX, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Robert Melton's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The Government has responded. (Doc. 9.) For the following reasons, Petitioner's petition is **DENIED** and this action is **DISMISSED with prejudice**.

### I. Introduction and Background

On September 11, 2008, a jury found Petitioner guilty of two counts of first-degree robbery and one count of armed criminal action stemming from a string of robberies at gunpoint. (Resp. Ex. B at 119-22.) The court sentenced him to an aggregate term of twenty-three years in prison. (*Id*.)

At trial, the Government presented the testimony of Margarett Kinder. The Missouri Court of Appeals summarized her testimony as follows:

> Ms. Kinder testified at [Petitioner's] trial that she went out to her car at 1:30 in the morning to take trash out. She bent down to the floorboard and when she looked up she saw headlights in her rearview mirror. Three men with guns rushed up to the car, two on the driver's side and one on the passenger side. One of the men on the driver's side had a bandana on which fell down. He pushed her down onto the seat and was holding her while he checked to see if she had any money. She threw her keys out the passenger window, and the man on the passenger side, who she identified as [Petitioner], went to get the keys. He then came around the car

and handed the keys to the man who had held her down. She had been pulled out of the car, and they pushed her aside and the three men got in her car and left. Her car was located and she was taken by the police about twenty minutes after the robbery to where the car was recovered. She was then taken about an hour later to view four men and she was asked if any of them looked familiar. She was able to pick out three of them, and at trial she said she was positive of her identification. . . . [S]he acknowledged during cross-examination that she said during her deposition that the identification was based on "their clothing, their build" and also what their hair was like.

(Resp. Ex. G at 104-05.) Petitioner was among the men Kinder identified.

While the four men were assembled, police took a photograph. (*See* Resp. Ex. K.) That photograph and several others were then shown to Susan Harvey, who had been the victim of an armed robbery by four men two days before. (Resp. Ex. A at 233-34.) Harvey testified that the police presented her with several individual and group photographs and that she had identified all four men as the ones who robbed her. (*Id*. at 235-36; 242-44.)

Prior to trial, Petitioner moved to suppress Kinder's and Harvey's identifications as unconstitutionally suggestive, but both were admitted. (Resp. Ex. B at 19-20, 30-31.) On direct appeal, Petitioner's sole argument was that the trial court erred by denying his motion to suppress Harvey's identification. (*See* Resp. Ex. F at 6.) Finding that police had presented Harvey with multiple photographs and had not made any statements to suggest whether any of the men pictured was a suspect in her robbery, the Missouri Court of Appeals affirmed Petitioner's conviction and sentence. (*Id*.)

Petitioner subsequently filed a pro se motion to vacate, set aside, or correct the judgement or sentence under Missouri Supreme Court Rule 29.15, in which he advanced eleven instances of ineffective assistance of trial counsel. (Resp. Ex. G at 11-15.) Petitioner was appointed counsel (*id.* at 3), who filed an amended post-conviction motion that added a twelfth instance asserting that trial counsel was ineffective for failing to impeach Kinder with allegedly inconsistent testimony she had given at the trial of Petitioner's co-defendant, Deangelo Jones (*id*. at 59-71).

The Motion court denied relief. (*Id*. at 102-09.) On appeal from that denial, Petitioner's only point relied on was that counsel was ineffective for failing to impeach Kinder. (Resp. Ex. H.) The Missouri Court of Appeals affirmed the motion court's denial. (Resp. Ex. J.)

Petitioner then filed this § 2254 petition, raising three grounds for relief:

(1) The trial court erred in denying his motion to suppress Harvey's identification;

(2) Counsel was ineffective for:

- (a) failing to impeach Kinder;
- (b) not requesting a lesser-included-offense instruction;
- (c) failing to "investigate alibi leads"; and
- (d)-(f) committing three "misidentifications violations"; and

(3) The prosecutor committed misconduct when he suggested that a defense witness had changed her story.

(Doc. 1 at PageID #: 2-9.) The Government argues that Petitioner procedurally defaulted Grounds 2(b)-(f) and 3 by failing to exhaust them in state court. (Doc. 9.)

## II.  Analysis

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

"'A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result.'" *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (alteration in original) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)).

A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court's factual findings are presumed to be correct, and a state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

### A. Procedural Default

As an initial matter, the government argues that Petitioner failed to exhaust all but two of his grounds. "[A] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the

prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan,* 526 U.S. at 848).

Petitioner raised all of his ineffective-assistance arguments in his initial post-conviction motion, but did not raise Grounds 2(b)-(f) on appeal from the denial of that order. (*See* Resp. Ex. H). "[A] claim presented in a Rule 29.15 motion but not advanced on appeal is considered abandoned." *Reese v. Delo*, 94 F.3d 1177, 1181 (8th Cir. 1996). In addition, Petitioner concedes that he did not raise Ground 3 in any state court filing. (Doc. 1 at PageID #: 9). Because Petitioner failed to invoke one complete round of Missouri's established appellate review process, and because the time for doing so is now past, Mo. Ct. R. 29.15(b), these grounds are procedurally defaulted, 28 U.S.C. § 2254(b)(1)(A).

A petitioner may avoid procedural default only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). In order to establish cause, the petitioner must show that "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner asserts that his failure to raise Grounds 2(b)-(f) was due to his direct-appeal counsel's failure to brief the issues. (Doc. 1 at 7.) But the default is due to the failure to raise the claims on appeal from the denial of his post-conviction motion and Petitioner does not claim that his post-conviction counsel was ineffective. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012). He therefore fails to establish cause to excuse the default of those grounds.

Similarly, Petitioner asserts that his failure to exhaust Ground 3 was due to ineffective assistance from trial, appellate, and post-conviction counsel. (Doc. 1 at 9.) But ineffective

assistance of counsel cannot serve as cause to excuse a failure to exhaust unless that claim was itself exhausted. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Petitioner did not do so here. Accordingly, the Court concludes that Petitioner has not established cause for the procedural default of Grounds 2(b)-(f) and 3 and the Court is thereby barred from considering their merits. *Coleman*, 501 U.S. at 750.

### B. Ground 1: Unduly Suggestive Identifications

Petitioner argues that the trial court violated his due-process rights by denying his motions to suppress Harvey's identification. Due process limits the admission of an eyewitness identification "when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). The trial judge must review the circumstances present when the identification was made to determine whether there was "a very substantial likelihood of irreparable misidentification." *Id*. (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

In his motion to suppress Harvey's identification, Petitioner asserted that the photographic line-up was "inherently suggestive and conducive to mistaken identification in that the physical line-up [from which the photograph was taken] included all four suspects." (Resp. Ex. B at 30.) On direct appeal, he added that "the officers put four young men in the line-up, the same four that were suspected of the robbery," meaning the "line-up did not test Mrs. Harvey's ability to identify the men who robbed her." (Resp. Ex. D at 11.) The Missouri Court of Appeals affirmed Petitioner's conviction, finding that "police showed Mrs. Harvey multiple photos of people, including [the photograph taken at the Kinder show-up]. The police did not tell her that any of the photos contained suspects nor did they give her hints." (Resp. Ex. F at 7.) The Court of Appeals held that, "[m]erely because the photo from which [Harvey] identified

[Petitioner] as the man with the gun had three other suspects, absent some improper action by the police, does not make it unnecessarily suggestive."

The Missouri Court of Appeals' decision was not contrary to or an unreasonable application of *Perry*. Petitioner cited no authority and the Court has not found any Supreme Court cases holding that presenting a group photograph of the suspects is unduly suggestive. To the contrary, the Supreme Court has suggested in the past that presenting a group photograph without indicating whom, if anyone, the police suspect is among "the most correct photographic identification procedures" available. *Simmons*, 390 U.S. at 383. This is especially true were, as here, the police showed Harvey multiple additional individual and group photographs. (Resp. Ex. A at 242-43.)

Petitioner also argued that he "was the shortest person [in the photo], the only one with twists in his hair and had the darkest complexion" such that "he stood out from the other [three]." (Resp. Ex. C at 2.) But Harvey identified *all four men in the photo* as her assailants. It is therefore unclear how Petitioner "stood out" given that Harvey recognized everyone in the photograph. In short, Petitioner did not show that the photographic identification posed a substantial likelihood of misidentification. *Perry*, 565 U.S. at 232.

### C. Ground 2(a): Ineffective Assistance of Trial Counsel

Petitioner argues that counsel was ineffective for failing to impeach Kinder with inconsistent testimony she had given at Jones's trial. (Doc. 1 at 3, 7.) To prove ineffective assistance of counsel, a habeas petitioner must show that his attorney's performance was objectively unreasonable and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Id.* at 694. Federal habeas review is highly deferential; "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether [it] was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (alteration in original) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (1933)).

"A failure to impeach constitutes ineffective assistance when there is a reasonable probability that, absent counsel's failure, the jury would have had reasonable doubt of the petitioner's guilt." *United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011) (quoting *Whitfield v. Bowersox,* 324 F.3d 1009, 1017 (8th Cir. 2003), *vacated in part on other grounds by*, 343 F.3d 950, 950 (8th Cir. 2003)).

In his post-conviction motion, Petitioner asserted that Kinder testified at Jones's trial that "she had no contact with the two men on the passenger's side, and did not see them because they were in her blind spot" (Resp. Ex. G at 65), which he argued was inconsistent with her testimony at his trial that she could see Petitioner "out the open window" on the passenger's side "looking down at me" with a gun (Resp. Ex. A at 287-88). The motion court rejected that argument, finding that Kinder "stated that her identification was based on the perpetrator's build and clothing, and her observation of [Petitioner] was not limited to the time he was standing by the passenger side of the car." (Resp. Ex. G at 105-06.) On appeal from the denial of his post-conviction motion, Petitioner asserted that Kinder "had previously testified under oath [at Jones's tiral] that she did not clearly see the person who she identified at [Petitioner's] trial as him." (Resp. Ex. H at 21-22.) The Missouri Court of Appeals affirmed the motion court's

denial, adding that Kinder had the opportunity to observe the men as they attempted to flee the scene. (Resp. Ex. J at 6.)

The Missouri courts' decisions were not contrary to or an unreasonable application of *Strickland*. Kinder testified that, during the robbery, *one* of the three men was in her blind spot. But she also testified that she could see Petitioner clearly through the passenger-side window. Both can be true. Moreover, Kinder testified that, after she was pushed out of the car, she watched the men as they stood in her garage, apparently discussing which of them could drive the stick-shift vehicle. (Resp. Ex. A at 299-301.) That alone is a sufficient basis to conclude that Kinder could reliably identify Petitioner despite the difficulty she described in seeing the men while she was being restrained. It is therefore improbable that counsel's emphasis on Kinder's alleged inconsistency would have led the jury to doubt Petitioner's guilt. *Orr*, 636 F.3d at 952.

### III. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Robert Melton's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED.**

**FURTHER** the Court finds that, because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998). A judgment dismissing this case is filed herewith.

Dated this 28th day of August, 2017.

*/s/ John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**